UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

VERA E. RIPPA,

Plaintiff,

v. Case No: 8:25-cv-01161-JLB-AEP

COMMISSIONER OF SOCIAL SECURITY,

Defendant.
_______________________________/

**ORDER**

Plaintiff Vera E. Rippa appeals the Commissioner of the Social Security Administration's final decision denying her application for Social Security Disability Benefits for lack of disability. (Doc. 1). The Magistrate Judge issued a Report and Recommendation (the "Report"), recommending that the Court affirm the Commissioner's decision. (Doc. 20). Plaintiff has filed objections to the Report. (Doc. 21).

Upon careful review of the entire record, including all parties' briefing and the Report, the Court **ADOPTS** the Report and Recommendation (Doc. 20), **OVERRULES** the objections (Doc. 21), and affirms the Commissioner's decision.

## LEGAL STANDARD

A district judge may accept, reject, or modify a magistrate judge's report and recommendation. 28 U.S.C. § 636(b)(1). When a party makes a timely and specific objection to a report and recommendation, the district judge "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id.*

In this Social Security appeal, the Court must determine whether the Commissioner's decision is "supported by substantial evidence and based on proper legal standards." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* The Court may not decide the facts anew, reweigh evidence, or substitute its judgment for the administrative law judge ("ALJ"). *Id.* Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that "the evidence preponderates against" the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).

## DISCUSSION

Because the Magistrate Judge thoroughly and accurately discussed the facts of this case in her Report, the Court will not repeat them here. (*See* Doc. 20).

An individual claiming Social Security disability benefits must prove that she is disabled. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). To evaluate whether an individual is disabled, the Social Security Administration's regulations require ALJs to use a "five-step sequential evaluation process." 20 C.F.R. §§ 404.1520, 416.920. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. §§ 404.1520(a), 416.920(a).

During the Social Security Administration's review process, the ALJ must consider evidence from medical sources. *See* 20 C.F.R. § 404.1520c. As to each medical source, the ALJ must consider the factors of (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) "other factors that tend to support or contradict a medical opinion or prior administrative medical finding." *Id.* § 404.1520c(c). While the ALJ must consider these five factors, the ALJ is required to discuss only supportability and consistency. *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2). "Supportability" means the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support the medical source's opinions, the more persuasive the medical opinions will be. *Id.* §§ 404.1520c(c)(1), 416.920c(c)(1). And "consistency" means that the more consistent a medical opinion is with the evidence from other medical sources, the more persuasive the medical opinion will be. *Id.* §§ 404.1520c(c)(2), 416.920c(c)(2).

In Plaintiff's case, the ALJ considered several medical opinions, including those of Dr. James Patti and Dr. Brian Carlson, and considered Plaintiff's

testimony, among other evidence. (Doc. 8 at 1502–12). In doing so, the ALJ concluded that Plaintiff was not disabled, as defined by the Social Security Act. (*Id.* at 1511–12).

On appeal, Plaintiff argues that the ALJ failed to evaluate the medical opinions properly, provided insufficient discussion of her residual functional capacity ("RFC"), and improperly discounted Plaintiff's testimony. (Doc. 21 at 3–12). Upon review, the Court agrees with the Magistrate Judge's Report that "the ALJ applied the correct legal standards, and the ALJ's decision is supported by substantial evidence." (Doc. 20 at 7). "[E]ven if [the Court] finds that the evidence preponderates against the ALJ's decision . . . [it] may not reweigh the evidence or substitute its own judgment for that of the ALJ." (*Id.* at 6) (citing *Winschel*, 631 F.3d at 1178; *Bloodsworth v. Heckler*, 702 F.2d 1233, 1239 (11th Cir. 1983)).

In evaluating Dr. Patti's findings, Plaintiff contends that the ALJ did not cite to medical authority in making specific findings, failed to compare consistent findings in treatment records with those of Dr. Patti, did not explain how other findings were more relevant than those of Dr. Patti, and wrongly concluded that Dr. Patti's findings conflict with Plaintiff's treatment. (Doc. 21 at 3–8).

The ALJ properly explained how she considered the supportability and consistency factors in evaluating Dr. Patti's opinion. Namely, the ALJ explained that Dr. Patti's opinion was not supported by his own examinations of Plaintiff. (Doc. 8 at 1509). For example, in evaluating Dr. Patti's March 2017 examination of Plaintiff, the ALJ explained that Dr. Patti noted "pain upon palpation localized at

the C5/6 and C6/7 level" but also noted that Plaintiff "retained normal cervical range of motion, intact motor strength of the upper extremities, normal sensation in the upper extremities . . . no tenderness on palpation with normal range of motion," etc. (*Id.*). The ALJ noted similar inconsistencies in Dr. Patti's subsequent examinations of Plaintiff. (*Id.*). Such internal inconsistencies support the ALJ's finding that Dr. Patti's opinion was unpersuasive.

The ALJ cited to medical authority in making her determinations. Plaintiff argues that the ALJ "failed to point to any opposing medical authority for her conclusions" and instead substituted her opinions for that of the medical evidence. (Doc. 21 at 3–5) (citing *Graham v. Bowen*, 786 F.2d 1113, 1115 (11th Cir. 1986)). However, the ALJ cited to medical evidence in the record that was inconsistent with Dr. Patti's opinion. For instance, the ALJ noted that there was an inconsistency with Dr. Patti's MRI revealing herniated discs and "EMG and NCV tests . . . within normal limits without evidence of electrical instability, and normal electrodiagnostic study of the upper limbs with no signs of cervical radiculopathy." (Doc. 8 at 1509) (citing *id.* at 425). Thus, the ALJ did not substitute his own opinions for the medical evidence in the record.

Plaintiff further argues that the ALJ "ignored contrary evidence supporting a finding of disability." (Doc. 21 at 4–5) (citing *Simon v. Comm'r, Soc. Sec. Admin.*, 7 F.4th 1094, 1106 (11th Cir. 2021) (explaining that a "complete failure to engage with significant portions of [a physician]'s clinical findings . . . [is] error")). The ALJ did not fail to engage with contrary evidence; rather, the ALJ provided an in-depth

analysis of the medical record and cited several findings that were inconsistent with Dr. Patti's. (Doc. 8 at 1509–12). The ALJ explained that Dr. Patti's findings were unpersuasive because they were both internally inconsistent and contrary to other medical evidence in the record. (*Id.*). Accordingly, the ALJ sufficiently compared Dr. Patti's findings with other medical evidence in the record.

Plaintiff also insists that the ALJ erred in concluding that Dr. Patti's opinions conflict with Plaintiff's medical treatment, which included medication, physical therapy, and injections. (Doc. 21 at 6–8; Doc. 8 at 1505). The ALJ properly characterized these treatments as conservative. *Doig v. Colvin*, No. 8:13–CV–1209–T– 17AEP, 2014 WL 4463244, at *4 (M.D. Fla. Sept. 10, 2014) ("The meaning of 'conservative treatment' is well known; it includes any mode of treatment which is short of surgery."). The ALJ went on to evaluate other treatments, such as a knee surgery in 2018. (Doc. 8 at 1508). In doing so, the ALJ explained that, after the surgery, "objective findings from examination show that [Plaintiff] had full strength in the lower extremities with no instability noted, and her gait was deemed non-antalgic." (*Id.*). Accordingly, the ALJ properly evaluated Plaintiff's medical treatments.

Next, Plaintiff objects to the ALJ's determination that Dr. Carlson's findings were unpersuasive. (Doc. 21 at 8–9). Plaintiff argues that the ALJ erred in finding Dr. Carlson's opinions inconsistent with exams from the same time period. (*Id.*). Dr. Carlson examined Plaintiff for the first time on June 2, 2023—over a year after the last date of insured. (Doc. 8 at 1510, 1737–34). Though "remoteness of the

opinion is, by itself, an insufficient basis to discount the opinion of a treating physician," the ALJ's analysis did not stop there. *Yoder v. Colvin*, No. 8:14-CV-440-T-TGW, 2015 WL 769931, at *3 (M.D. Fla. Feb. 23, 2015). In addition to the remoteness of the evaluation, the ALJ went on to explain that Dr. Carlson's opinions were largely reliant on treatment notes created after Plaintiff's last date insured and were "internally inconsistent with the results of the examination in October 2018." (Doc. 8 at 1510). Accordingly, the ALJ's evaluation of Dr. Carlson's opinion is supported by substantial evidence.

Plaintiff further objects to the ALJ's RFC determination. (Doc. 21 at 9–11). Specifically, Plaintiff argues that the RFC discussion lacked reference to any medical findings or nonmedical findings supporting Plaintiff's restricted RFC. (*Id.* at 10). "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p. The Magistrate Judge evaluated the ALJ's RFC discussion and found it was supported by substantial evidence because it provided a narrative detailing Plaintiff's statements, summarized the evidence, relied on nonmedical evidence, relied on a medical opinion from Dr. Scott Shrem, and considered the medical opinions of Dr. Patti and Dr. Carlson and found them inconsistent internally and with other evidence. (Doc. 20 at 16–17) (citing Doc. 8 at 29–33; *Castle v. Colvin*, 557 F. App'x 849, 854 (11th Cir. 2014) (finding that the district court erred in concluding that "the ALJ's findings should have been underpinned by a medical source

opinion"); *Green v. Soc. Sec. Admin.*, 223 F. App'x 915, 923 (11th Cir. 2007) ("The ALJ did not substitute his judgment for that of [the claimant's doctor]; rather, he determined that [the doctor's] opinion was inconsistent with objective medical evidence in the record.")).

Plaintiff takes issue with reference to *Castle* and *Green*, arguing that both are distinguishable because the records in those cases had scarce medical evidence. (Doc. 21 at 9) (citing *Castle*, 557 F. App'x at 854 and *Green*, 223 F. App'x at 923). However, as the Magistrate Judge acknowledged, the ALJ's RFC examination provided a thorough narrative of Plaintiff's statements on her condition and considered relevant medical evidence, including the opinions of Dr. Patti and Dr. Carlson. (Doc. 8 at 29–33). Additionally, the ALJ detailed the treatments and examinations of Dr. Todd Ryan, Dr. Rashel Potashink, Dr. Scott Sherm, Dr. Caryn Giacona, and Dr. Jacques Gulekjan. (*Id.*). Accordingly, the ALJ's RFC determination is supported by substantial evidence.

Finally, Plaintiff objects to the ALJ's assessment of her testimony, contending that the ALJ improperly discounted medical opinion evidence based on Plaintiff's statements concerning her treatment and symptoms. (Doc. 21 at 11–12). In determining the extent to which a claimant's symptoms, such as pain, affect the claimant, an ALJ considers the claimant's statements "in relation to the objective medical evidence and other evidence" and considers "whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between [the claimant's] statements and the rest of the evidence." 20 C.F.R. §

404.1529(c)(4). Here, "[a]fter careful consideration of the evidence," the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record" before going on to review the record evidence. (Doc. 8 at 30). Accordingly, the ALJ did not improperly discount Plaintiff's testimony.

Plaintiff's objections are due to be overruled because the ALJ's evaluation was "supported by substantial evidence and based on proper legal standards." *Winschel*, 631 F.3d at 1178. In any case, the Court may not reweigh evidence or substitute its judgment for that of the Commissioner. *Winschel*, 631 F.3d at 1178 (citation omitted). Thus, the Commissioner's decision is due to be affirmed.

*—Rest of page intentionally left blank—*

## CONCLUSION

Accordingly, it is **ORDERED** that:

1. The Magistrate Judge's Report and Recommendation (Doc. 20) is **ADOPTED** and made a part of this Order for all purposes.
2. Plaintiff's Objections to the Report and Recommendation of the Magistrate Judge (Doc. 21) are **OVERRULED**.
3. The decision of the Commissioner is **AFFIRMED**.
4. The Clerk of Court is **DIRECTED** to enter judgment in favor of the Commissioner and against Plaintiff, terminate any pending motions and deadlines, and close the file.

**IT IS SO ORDERED** in Tampa, Florida, on September 8, 2026.

John L. Badalamenti

JOHN L. BADALAMENTI
UNITED STATES DISTRICT JUDGE